The next case in our call this morning is agenda number seven. Case number 105457, People of the State of Illinois v. George Bailey. Counsel to approach the bench. You're fine, thank you. I was just noting that you were approaching the bench. Okay, thank you. Mr. Levin may proceed when he's ready. Good morning again, Your Honor. My name is James Levin. For the record, I represent the defendant, George Bailey. Your Honor, the police stopped the car in this case because the occupants, Mr. Bailey, who was a passenger in the car, and the driver were not wearing seat belts. The police did not observe any other traffic infractions. The question here, or the first question here, is whether the seat belt law permits the police to investigate a person's past conduct and run a warrant check for no reason other than the fact that he has not worn a seat belt. Under the seat belt law, the statute prohibits the police from conducting a search or inspection based purely on a seat belt violation. A warrant check in this case does qualify as such a search or inspection and is prohibited. How do the courts interpret the meaning of a statute? Well, Mr. Bailey and the State agree on the rules of statutory construction. We need to look at the statutory language. The court is not to read any exceptions or limitations in the statute that are not found in the statute. If a word in the statute is not defined in the statute, the court is to look at a dictionary for the popularly understood meaning of the word. Now, in terms of applying these rules of statutory construction, that's where the State and Mr. Bailey disagree. The State argues that the seat belt law, in effect, codifies or follows Fourth Amendment jurisprudence. And I would argue that that's an erroneous interpretation and a misapplication of the rules of statutory construction. The statute doesn't contain any language adopting the Fourth Amendment or adopting Fourth Amendment jurisprudence. The State phrases the issue as whether or not a warrant check is an unconstitutional search. But there's no exception for unconstitutional searches within the language of the statute. The statute prohibits searches and inspections, not just those that are deemed to be unconstitutional under current Fourth Amendment jurisprudence. So... You're arguing that a warrant check is an inspection. Is that right? A warrant check is an inspection and a search. I argue both. And the appellate court went through the different meanings of search and inspection. So the appellate court, as I do, asks this court to apply both terms, search and inspection. Now, what the State argues in this case is that we should apply the meaning of search as the U.S. Supreme Court has applied the term with respect to unconstitutional searches. And what I'm asking simply is this court just apply a dictionary definition of search. The State cites in its brief the Kyllo case. And in the Kyllo case, which is a U.S. Supreme Court case, they cite a dictionary definition of the word search. And that's precisely what I'm asking this court to do. I'm asking the court to apply a dictionary definition of the word search. I respectfully submit that the State has made a jump in its reasoning by arguing that just because Kyllo defined search within the case, that that means that that Fourth Amendment jurisprudence is applicable to the meaning of a State statute. I'm arguing that it's simply based purely on the language of the statute. As this court has and all courts have done in the past, they've applied traditional and historical rules of statutory construction, interpret the plain language of the statute with no exceptions read into the statute. So in applying a dictionary definition of search or inspect, it means a checking over of information, an investigation. And under those terms, a warrant check does qualify as a search, even though this court in Harris 2 has construed a warrant check as not to be an unconstitutional search. The statute is different because the legislatures did not use the word unconstitutional and did not mention the Fourth Amendment. So we don't need to reach the issue of what is an unconstitutional search. We just reach the first issue, what is a search. If we were to define that this is a statutory search and not a search that implicates the Fourth Amendment, we wouldn't be dealing with a constitutional issue, would we? Well, the State argues that we should apply Fourth Amendment law. We should apply Harris 2. I understand that. But your argument, if I understand it, would suggest that the argument that a search does not implicate the Fourth Amendment would not apply here because this is not the kind of search that we're talking about in the context of the Fourth Amendment. Right. That's what I would argue. My further question, then, is, is there an exclusionary rule to even deal with? Yes, there's a State statutory exclusionary rule. Now, the appellate court did not discuss it in its opinion and the State did not raise it in its brief to the appellate court. But the State argued in its response brief that there's no State statutory exclusionary rule. Now, I cited it in my opening brief, the State statutory exclusion rule. I did cite it. It's 725 ILCS 14-12. And I also quoted it in my reply brief. And basically, it says that any aggrieved person of an unlawful search may move to suppress evidence. And, Adrian? If I can, the term unlawful search, I know what, I think I know what the answer will be. But in a term, unlawful search raises the specter of the Fourth Amendment. The court, the legislature did not use the word unconstitutional search. They used the word unlawful search. So unlawful search can encompass unconstitutional searches and it could also encompass searches that are illegal under State statute. Unlawful is the key term. And I believe if the State is reading into the statute unconstitutional, I believe that would be a violation of the statutory intent. The statute specifically uses the word unlawful and not unconstitutional. Didn't this court recently in Tobias confirm that a search and seizure provision of the Illinois Constitution is construed lockstep with the Fourth Amendment? But in this case, we have a State statutory issue. We don't have the, I do raise an Illinois constitutional issue in my Issue 4, but my Issue 1 and my Issue 3 are based on State statute. And so Caballus would not be applicable for that reason. I'm just simply asking the court, and I don't want to repeat myself, I'm just simply asking the court to apply the historical rules of statutory construction that it has applied in every single case. And that is, what do the words of the statute mean and how do they apply in the case at hand? The question is not whether the Federal Constitution provides more protection, the same protection, or less protection. The question is solely, what do the words mean and how do they apply? And I discussed that at length in my brief. And I also cited People v. Campbell, where the court interpreted a State statute and a State rule, not a State constitutional provision, and determined that it should be applied and interpreted independently of Federal constitutional doctrine. It involved the 401, Rule 401 admonitions that are required to be given to a defendant. And under the Sixth Amendment, the defendant does not have that right, but under Rule 401 and a State statute, the defendant does have those rights. And the court held unanimously that this court should be, interpret the State statute independently of Federal constitutional doctrine. So, implying the meaning of the search or inspect provision, I simply took a dictionary definition, as the appellate court did, and the checking over of information, the investigation of a person's past conduct does qualify as an inspection or search within the meaning of the statute. Now, I also mentioned that if Fourth Amendment law, if the State statutes interpreted in lockstep or mirroring the Fourth Amendment law, that it could have an adverse effect of producing instability in the law. Because it's quite possible that, and let's take an example that the Caballos decision, the Supreme Court decision, that did put our law in a state of flux because we had Gonzales issued in 2003. So, it was quite possible, and in fact, just in March 2008, the court overruled Gonzales in Harris 2. So, any time that this court interprets a decision involving State law, and it ties that decision to Federal law, the United States Supreme Court could always overrule or modify its precedent, thereby creating instability in our own State law. So, what I'm suggesting here is that if this court interprets State law independently of Federal law, this court is sovereign in its own sphere and cannot be overruled and have its decisions modified by the United States Supreme Court, because this court is relying specifically on State law, and the United States Supreme Court cannot overrule this court on State law. It shows, it reflects respect for stare decisis and creates stability in the law. And if this court were to tie the meaning to the Fourth Amendment, it's always possible that this, the U.S. Supreme Court could modify or overrule Caballos in some later decision. That would be inconsistent with the legislative intent. The legislature had intent in mind when they used the word to draft it. It would become redundant. It would become meaningless if the State statute would just simply be replaced by Fourth Amendment jurisprudence. It would render the State statute a nullity, in other words. Your Honor, unless the court has any questions on that, I'd like to go to the Federal constitutional issue. And in the Federal constitution, we have the Belton case. What happened here is after the warrant check turned up a misdemeanor domestic battery warrant, the police, pursuant to Belton, put the defendant in the back seat of a squad car and went ahead and searched the interior and found illegal drugs. And under a broad version of Belton, the police can search the interior of the car as contemporaneously with the arrest of a recent occupant of the motor vehicle. But there is a dispute on the court as to whether there's a broad or narrow version of Belton to be applied. Justice Scalia and I... But my question before we embark upon the journey through that again is even assuming that there is a debate on the court on this issue, and there clearly is. You've pointed that out. Doesn't the law still remain at the United States Supreme Court level where it was before this conflict arose and the several opinions? And I guess my final question is are we empowered at this point to change what is present constitutional law because we believe that the court itself will do it at some point in the future? I don't think that would be a principal reason to rule on the case. My reasoning is not that Belton should be overruled, because this Court doesn't have the authority to do that, at least insofar as the Federal constitution. But Belton remains the constitutional law as we speak here today. Exactly, it does. But what version of Belton is the law? There is a dispute. Justice Scalia does not advocate the overruling of Belton, and the four-justice plurality of Thornton is in sharp disagreement with five other members of the Court. Five members of the Court disagree with the four-justice plurality. The four-justice plurality wrote a footnote for, in which they said that we should not use this case as an opportunity to overrule Belton. But that wasn't concurred in by five members of the Court. Justice Scalia says that the bright-line rule of Belton should be preserved, but he says it should only be applied in the type of situation that was at hand in Belton. That means that where there's reasonable cause to believe there's something incriminating in the car. So in other words, the bright-line rule applies. Upon arrest, they could search the car, but only if there's reasonable cause to believe that there's incriminating events in the car, which is what the facts of Belton were, because Belton involved... In Thornton, the five justices who didn't join the plurality didn't agree with each other either. Well, they all advocated a narrower version of Belton than the four-justice plurality in Thornton. They all advocated a narrow version. Under the People v. Lopez case decided by the Court two months ago, where there's a fracture court, the Court is to apply the narrowest version of the federal law, and that's represented by Justice Scalia. He wants to preserve Belton, but on the narrowest grounds possible. That is, that a search of the car is only justified if there's reasonable cause to believe there's incriminating evidence in the car. And that's not present in this case. So I'm not...steering decisis must be applied. I'm not advocating the overturning of Belton as far as the federal Constitution goes. So...and that's perfectly... I'm asking that that opinion be adopted. It construes Belton. It's an issue that's undecided by the Supreme Court. In fact, in footnote four of the case, or footnote two of the case, they say that we do not settle the issue today of whether or not a person who is unquestionably beyond reach of the interior of the car can grab a weapon or destroy evidence. So in footnote two, they specifically decline to address the issue that we have in this case. And Justice Scalia answers that question and wants to apply Belton. He doesn't want to overrule it. My third issue involves the Code of Criminal Procedure, 1964 Code of Criminal Procedure, section 108-1. And I'm arguing that that should be...if this Court were to apply the broad version of Belton, then I would argue that 108-1 gives the defendant a right to be free from an unreasonable search of his car. Basically, it was enacted in 1964, 17 years before Belton. And Belton is a bright-line test. And in 1964, we didn't have a bright-line test. The traditions of Illinois involved case-by-case determinations. I cite the Watkins case, 1960, the Lewis case, 1966, both before the 1970 Constitution. And in those cases, we look to see whether the purpose of the search is to protect officers' safety and prevent the destruction of evidence, and whether or not the defendant...whether or not the object of the search is within the immediate presence of the defendant arrested. And if we apply those principles set forth in 108-1 to the case at hand, the answer must be in the negative, because Mr. Bailey was handcuffed in the backseat of his squad car. He could not possibly reach in to grab a weapon inside the car or grab any evidentiary items that might be in the car. Does it make a difference in this case? Wasn't there a driver? Wasn't your guy the passenger? Yes. So how does that...I mean, if you have somebody else in the car, they're certainly able to grab a weapon or dispose of evidence. Doesn't that impact officer safety? Well, that would call for a case-by-case determination. That's exactly what I'm asking the court instead of applying a bright-line rule. Because 108-1 calls for a case-by-case analysis, and that's what I'm asking for. Under the facts of the case, the driver of the car was also escorted outside of the car and was under the custody of an officer. There were two officers involved, and one officer had custody of Mr. Bailey, and the other officer had custody of the driver, and the other officer had custody of Mr. Bailey. Now, I would argue that the search was illegal under 108-1, even if this Court finds it was constitutional under Belton. And I would ask the Court to apply Campbell and several other cases in this Court's jurisprudence, like Hoskins-Helm, that all applied 108-1 independently. Now, maybe in the Hoskins case, the case came out against the defendant. But the Court still applied a separate analysis, one to the constitutional issue and one to the statutory issue. I don't think the state statute should be read out of our jurisprudence. The legislator wanted the statute in 1964. And for the Court to just simply apply Fourth Amendment law as it now exists would conflict with the expressed legislative intent in those cases. Lastly, I address the Illinois constitutional issue, and I know that we have the limited lockstep doctrine. And there is the presumption that federal law will apply. But this Court can deviate from lockstep if the defendant shows that a very strong tradition of our courts requires such a deviation. And we do have that in this case. Our tradition in this case was to apply case-by-case analysis instead of a bright-line rule. We had that tradition under the 1964 statute, and that's one thing the Court should look at. We had that tradition under Watkins, Lewis, and Schimel, which were all pre-1970 cases. I also cite a New Jersey case, Echol, and the reason why that's persuasive is because it's an interstitial case, similar to the approach that this Court uses in Cabalas. I look at the debates where they expressed a very strong preference for the warrants requirement. I look at Delegate DeVorek's comment that the search and seizure provision of the Illinois Constitution involves no new concepts. Well, Belton is a new concept. It applies a bright-line rule determining that all searches are constitutional if the person is arrested as an incident to a lawful arrest. But that wasn't the concept at the time the 1970 Constitution was passed. Courts looked at it on a case-by-case basis to determine whether there was reasonable cause to believe that the person could grab a weapon or evidentiary item inside the car, or whether there was reasonable cause to believe there was something incriminating in the car. In this case, we don't have anything incriminating in the car that the defendant can reach, and therefore, in effect, the citizens of counsel are failing to file a motion to quash arrest and suppress evidence. And I would ask this Court to reverse Mr. Bailey's conviction and remand for new trial without the incriminating evidence. Thank you, Mr. Levin. Thank you. Good morning, counsel. Catherine Saunders from the Office of the Attorney General on behalf of the people. At the outset, it is important to bear in mind that defendant's claim is grounded in the Sixth Amendment right to effective assistance of counsel. This is not a Fourth Amendment case, and so in order to prevail, he has to show deficient performance and prejudice. Of course, the decision whether to file a motion to suppress is a matter of trial strategy that's entitled to a great amount of deference, and to establish that he's prejudiced by counsel's failure not to file a motion to suppress, he has to show, one, that there's a reasonable probability that such a motion would have been granted. And that's, in fact, where his claim falls apart. Defendant can't meet this burden because the statutes here that he relies upon, the seat belt statute in Section 108.1, they confer no additional rights beyond those stated in the state and federal constitutions. And because the warrant check and the search incident to arrest didn't violate the Constitution, a motion to suppress on those grounds wouldn't have succeeded, and therefore counsel cannot have been ineffective for failing to file one. As we demonstrated in our brief, neither the search incident to arrest nor the warrant check violated the seat belt statute. And the seat belt statute says that a law enforcement officer may not search or inspect the driver, the passenger, the motor vehicle, or its contents solely because of a seat belt violation. Now, it's clear that the vehicle search incident to arrest did not violate the seat belt statute, because although the initial stop was premised on the seat belt violation, the vehicle was searched incident to defendant's arrest on the outstanding warrant. Nor was the warrant check itself a search or inspection violation of the statute. Counter to defendant's position, the warrant check was not a search. This is because the word search as used in the statute has to be given its ordinary and popularly understood meaning, which is the meaning it has in the Fourth Amendment and Article I, Section 6 of our state constitution. In other words, the statutory meaning of search is contiguous with the constitutional meaning of search. And so to find, it's clear that the warrant check here was not a search. The defendant didn't have any reasonable expectation of privacy in the arrest warrant. Although he may have hoped to, he had no right to conceal the existence of the warrant from the police officers. Like the dog sniff in Cabalas, the warrant check disclosed no legitimately private information. And again, as my opponent mentioned, Ms. Gordon-Harris too recently confirmed that a warrant check on the occupant's  And the reason why I'm saying this is because the state constitution here is a lawful statute. And therefore, lawfully, a stopped vehicle does not violate the Fourth Amendment so long as the stop is not unnecessarily prolonged in order to conduct the check. And here there's no evidence or argument to that effect and, therefore, the warrant check simply was not a search. Nor was the warrant check an inspection. Now, as used in the seat belt statute, in light of legislative history, inspect should be considered as synonymous with search. And aids to statutory construction such as dictionary and general tenets of statutory construction do not yield a definitive meaning of inspect. It's true. On the one hand, two tenets of statutory construction suggest that the word inspect might have a meaning apart from search. But on the other hand, application of the presumption that the legislature didn't intend an absurdity tends to strongly support the people's position that inspect is synonymous with search here. Because if inspect is interpreted to mean any kind of police review or examination or evaluation, a construction like that would be a violation of the statute. And so it's important to understand that the statute does not apply to inspect. It applies to all kinds of inspections, not only warrant checks, expedition warrant checks, but also common police practices like evaluating demeanor of a suspect or scanning for objects in plain view or smelling drugs or alcohol on or about a defendant or passenger. Ms. Saunders, that brings a question to mind. If, in fact, I think the facts of this case is none of the passengers had their seatbelts on, is that right? Correct, the driver and the passenger were not wearing their seatbelts. But what if the driver had his seatbelt on and not the passenger? Would that exclude the driver from his warrant check? But is everyone, I mean, are you saying that the statute permits a warrant check for all those who didn't have a seatbelt or those who did, you know, had a seat, did have a seatbelt, or all of them? What does the statute mean to that? The statute means, as I get into the legislative intent, we do have to look at the legislative intent. And when you look at the statute in the context of that legislative intent, it's clear that all the legislature intended was to reassure the constituents that there would not be a search incident to a citation for seatbelt violation. Initially, Illinois had secondary enforcement of the seatbelt law. Whose warrant can be, or whose search can be looked at regarding a warrant search? The one that, where is it? Oh, in your hypothetical, both the driver and the passenger would be violators of the statute, and you could run a warrant check on both because they had both violated the statute. And what if one didn't? Pardon me? And if one person had a seatbelt, then you wouldn't run a check on that person, would you? On the person who was wearing the seatbelt? Yes. I believe it would be permissible, yes. Certainly the officer could ask for the identification, and if the person who was wearing, say the passenger was wearing the seatbelt, if they in fact complied, the officer could run a warrant check. Because, again, a warrant check doesn't disclose any kind of private information. It has no reasonable expectation in the privacy in an outstanding restaurant. The stop was based on, under the statute, not wearing a seatbelt, but if one person was. It doesn't insulate anyone else in the car from regular police procedures or law. Can we, before we leave that, because I'm not really sure what your position is. What happened here is that the car was stopped for a seatbelt violation. Correct. The officer asked for identification from each of the parties in the car. He clearly asked for identification from the driver. The record is unclear how he came to learn of defendant's identity, whether he simply asked him his name or he asked for identification. He took the name that he had and he ran a warrant check on him. Yes. The basis of running the warrant check, nobody is trying to justify that by reason of the fact that there was a seatbelt violation. No. It's just routine police procedure that they're allowed to do that. It doesn't implicate the Fourth Amendment as long as the seizure is not unreasonable. Anyway, Justice Burke's various hypotheticals isn't the right answer. Well, it really doesn't make any difference, because if they'd gotten the name, they could have done a warrant check. Isn't that really your position? There is a threshold issue, as the Court had to discuss in Harris, too, about getting the name and the request for identification. Yes, once that's valid, yes, it doesn't matter. It has to be voluntary. A voluntary act, and that's not questioned in this case. Correct. As explained, legislative history may explain that what the legislature intended, all they intended by enacting the seatbelt statute, is to reassure the public, the constituents, that there weren't going to be search, incident to citation for seatbelt statutes, because, as I was explaining earlier, you used to have secondary enforcement of the seatbelt statute. That meant the police could not stop you for a seatbelt violation, but they could cite you for it if, in fact, they had stopped you for a different event. Earlier in your argument, you made reference to other facts that could exist that would have justified further action by the police. Pardon me? You referred that there were other actions or other things that could have existed, the demeanor of the driver, that sort of thing. Yes. That could have resulted in a proper search. Right. And so if we construed inspect to prohibit that sort of any kind of police review or examination, it would lead to an absurd result. If the officer knew who the driver was and knew something about the criminal background of the driver, as an example of something that might be different. I don't know that that would apply. Your question is whether... He actually knew that he had been to court and he had worn a seatbelt. And whether that would be a search or inspection by virtue of the fact that he had this prior knowledge? No, I don't see how that could fit within the definition of search or inspect. That's knowledge he possesses of his own. He doesn't have to go outside and examine the suspect in any way. When the legislature legislated debates on this section, the Senator Cullerton was the bill's sponsor. And he explained that he just wanted to reassure people that by moving from secondary to primary enforcement, it doesn't give law enforcement officers any extra right in going to search where they were not permitted to before. That whatever the current law is, set by case law or by statute, allowing police to search vehicles... I could try one more time to make it clear. There has to be something other than the fact that there was a stop for a violation of the seatbelt law for the officer to reach the point. Secondary enforcement? I'm sorry. There has to be some other fact in the case, other than simply stopping the car because there was a seatbelt violation and moving for the search. We all agree that that would be improper. Correct. So there has to be something that is described in the word solely. There has to be something beyond solely. The statute uses that particular word. You can't do these things solely based upon the arrest for the seatbelt law. There has to be some other factor. In this case, you would suggest that the other factor is that there was a proper warrant check that revealed the warrant. The search incident to arrest is justified by the fact of the arrest on the outstanding warrant. On the outstanding warrant. Yes. To construe the statute in accord with the defendant's argument really denies effect to the legislature's clearly expressed intent here. That drivers stopped for seatbelt violations be treated just as any other traffic violator except with this additional caveat to reassure them that they couldn't be searched in addition to citation. Further, this court should reject any contention that the defendant makes that this no search language somehow codified the laws that existed at the time of the amendment's passage in 2003. Because again, by virtue of the legislative history, you can see that the legislature didn't intend to make any change to existing jurisprudence. All they intended to do again is reassure people that by moving from secondary to primary enforcement of the seatbelt statute, police officers were not now going to be searched. Turning to defendant's second statutory argument, the appellate court here correctly concluded that subsection 108.1, which applies to search as incident to arrest, was simply enacted in order to codify the constitutional principles establishing an exception to the Fourth Amendment's warrant requirement for search as incident to arrest. And that it really confers no protection beyond the Fourth Amendment or the state constitution. The statute is reproduced at page 2 of the blue brief and you can see that the language is permissive. It lists the purposes for which police may conduct warrantless searches, but it doesn't place any limit on their conduct. The statute here has to be construed in light of subsequent decisions, such as Belton, such as this court's decision in Bailey construing the parameters of the search incident to arrest. In fact, Belton is a gloss on this statute, so that in the case of a warrantless search incident to arrest, Belton and Bailey define the area within the person's immediate presence as the passenger compartment of the vehicle. Now further, the statute permits searches for evidence related to an offense. It doesn't state that evidence has to be related to the offense for which the defendant is arrested. This also undermines defendant's argument that drug evidence here should be excluded because it was unrelated to his offense for domestic violence. And also, its intention then with Justice Scalia's concurring opinion, Thornton, it seems that Illinois law permits searches for evidence related to an offense and not simply the offense of arrest. And like the Siegfeld statute, it's unreasonable to conclude that the legislature intended to somehow codify search and seizure jurisprudence as it did in 1964 and prohibit any kind of future development in the law. The defendant really provides no support for his argument that it does. And regarding both the defendant's statutory contentions, as the court noted earlier, there is no exclusionary rule applicable to statutory violations, and the defendant really fares no better under his statutory exclusionary argument under the Code of Criminal Procedure because it applies to, quote, those aggrieved by an unlawful search and seizure. And that tends to call mind again the constitutional exclusionary rule, or excuse me, the exclusionary rule applicable to constitutional violations. Turning then to defendants constitutional arguments, there's no question here that the search was valid under the Fourth Amendment and Belton holds that when the police officer has made the lawful custodial arrest of the occupant, may, as a contemporaneous incident of the arrest, search the passenger compartment of the vehicle. And in so holding, the court rejected the very proposition advanced by defendant here, that once he's handcuffed and seated in the back of the cruiser, that there's no longer any justification for the search. In fact, nearly every state and appellate court to consider the issue has come out this way, including this court in People v. Bailey where the court held that the validity of a Belton search is not affected by the circumstance that defendant no longer had access to his vehicle when the search was conducted. Thornton recently reaffirmed Belton, although my opponent argues that there's no majority opinion. Thornton actually, there were five justices in the majority. Justice O'Connor concurred in that opinion as to all but footnote four. So in fact, there is a majority opinion. Thornton reaffirmed Belton. And unless and until the Supreme Court overturns or otherwise limits Belton, this court should reject defendant's invitation to adopt Justice Scalia's concurring opinion in the approach. And the Supreme Court admonished that his decisions remain binding precedent, regardless of the fact that subsequent decisions have cast some question on their continuing validity. And this court, too, has held that it's the prerogative of the Supreme Court to overturn their own decisions. Because the vehicle search here was justified under Belton and this court's decision in Bailey, defense counsel really had no basis on which to file a motion to suppress, and there's no reasonable probability that a motion to suppress would have succeeded. And significantly here, it's important to note that by asking this court to limit Belton and to overrule Bailey, which he's got to do to win, defendants effectively conceding that his motion to suppress wouldn't have succeeded under existing law and he's essentially conceding that his ineffective assistance claim is no merit. And finally, as to the state constitutional issue, the search here, the vehicle search incident to arrest was also constitutional under a state constitution. This court adopted Belton and Bailey, reaffirmed that holding in statement, and if there were any question as to whether the state had already adopted it, we would adopt it under limited lockstep. The general rule under limited lockstep being that the state constitution means what the federal constitution means, with exceptions, of course, where the language of the state constitution is different or something the debates or the delegates indicates a contrary intent. Or where there's a longstanding state tradition of preexisting state law that conflicts with the Supreme Court's interpretation. And neither of those exceptions applies here. This court recently reaffirmed in Kabbalah that the drafters of the constitution intended Article I, Section 6 to mean what the Fourth Amendment means. And contrary to defendants' argument, really, Belton does not conflict with preexisting jurisprudence. Belton is just an extension of the Schimel rule. What it did is draw a bright line. This is the Schimel rule permitting warrantless searches incident to arrest for looking for weapons or evidence that something might be seized and destroyed. Really, that was difficult to apply in the context of the automobile search incident to arrest situations. So what Belton did is simply craft a bright line rule to indicate that there is no contradiction of the Schimel rule and does not, in fact, conflict. And therefore, the search was lawful under the state constitution as well. Because a motion to suppress would not have succeeded, defendant cannot satisfy either of the stipulated prongs and his claim is without merit. And if there are no further questions, we ask that the court affirm the judgment of the appellate court. Thank you. Mr. Levin. Mr. Levin, Ms. Saunders began her opening, or her argument, excuse me, in the opening statement saying that this is an ineffective assistance of counsel argument that you're having to make and that you have to satisfy two prongs, one being that the motion would probably have been granted. Are we to place ourselves in the position of the trial judge at the time the motion would have been presented in 2005 to determine what existing law was at that time to make that decision as to whether or not the motion would likely have been granted? Your Honor, I think Your Honor is referring to my alternative argument that as far as the seatbelt law goes is that the law in effect when the seatbelt amendment was passed was the Gonzalez case. And I know that Gonzalez was subsequently overruled by Harris too. Senator Cullerton, one of the legislatures, the legislator who was responsible for drafting the statute said that he wanted to reassure people that the police would have the extra right to search and he said that for all intents and purposes current law would apply. Well, the current law in effect when the seatbelt law was passed was Gonzalez. And under Gonzalez a warrant check would have been unconstitutional as shown by Harris 1. Now the state says that subsequent interpretations of the of this issue should prevail, that it should be Harris 2. My argument is if the court does apply Fourth Amendment jurisprudence to this case, it's Gonzalez because how does the legislature know what the law is going to be at some future unknown time? They applied the principles of law that they knew to be applicable at the time and Gonzalez said that a warrant check would, Gonzalez didn't specifically address the warrant check issue but the fundamental nature of the stop was a critical prong of the inquiry and in Harris 1 the court held that the warrant check would impermissibly change the fundamental nature of the stop. So that's why it's my position, my first position is this court should apply the plain language of the statute independently of the Fourth Amendment. In the alternative if the court does apply the Fourth Amendment it should be Gonzalez because that's what the legislature intended to codify at the time it passed the seat ball law if we assume it did intend it did intend to codify Fourth Amendment principles. It couldn't possibly codify U.S. Supreme Court decision Cabales or Harris 2 because Cabales is 2005 and Harris is 2008. So I would argue that it's Gonzalez and therefore a motion to suppress based on Gonzalez and its progeny. Progeny Harris 1 would have prevailed. Then how would we rectify that with the Belton case? The Belton case prior, perhaps prior to the time of Scalia's dissent or concurring opinion in Thornton? Well the Scalia, the Scalia concurring opinion, that case was also, Thornton I believe was 2005 and the legislature passed the amendment in 2003. So my position is that you know that interpretation of Belton always existed. I mean if we look at the facts of Belton, we don't have a defendant who was placed in the back seat of a squad car, arrested and handcuffed. That wasn't the situation. The facts of Belton were one police officer and four occupants of a car who were arrested outside the car. So we weren't faced with that issue in that case. And the fact of the matter is the police in Belton did have reasonable cause to believe there were drugs in the car because they found drugs outside the car. And so the facts of Belton are distinguishable from the facts of this case. Mr. Bailey had an outstanding warrant for misdemeanor domestic battery. It didn't involve a drug  officer could see justifying a search of the car other than the fact that there was a seat belt violation. So the facts are markedly different from, the facts in Belton are markedly different. And Scalia is just repeating a truism of the case that there was reasonable cause to search in Belton and that's why the court came out as it did in Belton. That's Scalia's view of it and he does so specifically adopting the principles of stare decisis in this case and in that case. So I would argue that an effective assistance of counsel claim would lie based on the situation. I would like to address your Honor, Chief Justice Fitzgerald's question to the State. Could the police officer rely on demeanor or could the police officer rely on what he knew about his criminal background. Let's say the police officer knew this person that he stopped and recognized them as perhaps being dangerous or something of that matter. And I would argue that that's outside of the statute. I would agree that that's not a search. I agree with the State. Because anything that's in plain view within the car, anything that the police officer walks over to the car and sees marijuana plants in the car let's say or sees something incriminating in the car then that in and of itself would give him reasonable cause to go ahead and search the car. Arizona Hicks provides, the Supreme Court provides a very good illustration of this. What's in plain view is not a search. So there's no search or inspection within the meaning of the seatbelt law by viewing something that's in plain view. Plain view is not a search. So here, and this raises another question, there's got to be something other than a seatbelt law violation to justify the warrant check and the search. And here we don't have anything. We just have a seatbelt law violation. The police didn't observe any traffic infractions. The police didn't observe any suspicious behavior. And that argument is accurate if a warrant check is a search or an inspection. My argument is accurate if warrant check is a search or inspection. If it's not, then the argument doesn't work. Well, one strand of it doesn't work, but my other strand is that before the seatbelt law was enacted, the rule was that the police could not stop a car for a seatbelt violation. And the legislatures were very concerned about the expansion of police powers. What they wanted to do was make sure that people's safety was protected. So they had an amendment to the law allowing the stop of a motor vehicle and the writing of a ticket. And they wanted to limit it at that. They didn't want to expand police powers to search. Now, if the old law was in effect, they would have never had the authority to stop the car in the first place. The warrant check would be illegal. The search would be illegal. But under this new law, as the state argues, they have the right to stop them, get an ID, run a warrant check, and then search the car. That constitutes a very large increase and expansion of police powers that was not contemplated by the legislature. So they wanted to reassure the people that the seatbelt law would not expand police powers to do a search. And that's exactly what the state is arguing in this case. If they did the warrant check and found a warrant, would they have a right to arrest the defendant who was named in the warrant? If they did a warrant check and that warrant check was legal and they found his name... If they found a warrant check, if it was legal to do a warrant check, then they would have the authority to arrest him, yes. And to search his person? Search his person under U.S. v. Robinson, yes. But not to expand that search to the car. They wouldn't be able to expand the search to the car based on the issues 2, 3, and 4 I raised. The Code of Criminal Procedure, Belton, and the Illinois Constitution. Plus the general gist of the legislative intent underlying the seatbelt law. I'm not limiting it to 2, 3, issues 2, 3, and 4 under issue 1. Because the general idea there is, as Senator Culverton stated, you don't want the seatbelt law to be used as a pretext for people, the police to be going into people's cars. And that's exactly what happened in this case. I'd also like to address an issue that Your Honor, Justice Thomas raised about the possibly applying cabalas to the Code of Criminal Procedure. Does the state statute have to follow the interpretation of the Fourth Amendment? And the state argued something in their argument that you have to show under a limited lockstep, show that the language is different in order to justify a deviation. Well, 108.1 is far different, has far different language than the Fourth Amendment. The Illinois Constitution has very similar language, but the 108.1 doesn't have any language similar to the Fourth Amendment. It covers the search incident to arrest exception to the warrant requirements, far different than the Fourth Amendment. So that justifies a deviation. The legislative intent underlying 108.1 justifies a deviation. I don't think the limited lockstep should apply at all, because I just think that the historical and traditional rules this Court has applied in every case says that the Court should simply apply the plain language and determine what the statute means at the case at hand as it did in the People v. Campbell case. So unless the Court has any further questions, I'd ask the Court to rely on my opening and reply briefs, because I believe that both those briefs thoroughly rebutted the arguments of the state, which I didn't have an opportunity to raise in this oral argument today. So I'd ask that the Court review the briefs. And with that, I have nothing further unless the Court has any further questions. Case number 105-457.